**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SANDRA J. ROBBINS a/k/a SANDRA ROBBINS HENDERSON, | Case No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| NEWREZ LLC f/k/a NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING; U.S. BANK TRUST NATIONAL ASSOCIATION; 1900 CAPITAL TRUST II; BAYVIEW LOAN SERVICING LLC; and DIAZ ANSELMO & ASSOCIATES, LLC, | |
| Defendants. | |

## COMPLAINT

Plaintiff SANDRA J. ROBBINS a/k/a SANDRA ROBBINS HENDERSON, through undersigned counsel, brings this complaint against Defendants NEWREZ LLC f/k/a NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING ("Shellpoint"); U.S. BANK TRUST NATIONAL ASSOCIATION ("US Bank"); 1900 CAPITAL TRUST II ("Capital Trust"); BAYVIEW LOAN SERVICING LLC ("Bayview"); and DIAZ ANSELMO & ASSOCIATES, LLC ("Anselmo"), and alleges as follows:

### NATURE OF THE CASE

1.     Several years ago Plaintiff fell behind on her mortgage. She worked with her mortgage servicer at the time, Bayview, to address her delinquency. On or about June 26, 2017, Bayview offered Plaintiff a loan modification that would bring her current. The offer was made in writing and required that Plaintiff take three steps to accept: (i) sign and return the letter containing the offer; (ii) enroll in an automatic payment option; and (iii) make the first payment by July 1, 2017.

1

2.      Plaintiff proceeded to take all three steps. She signed and returned the offer letter via fax on June 30, 2017. She set up her bank account with Bayview's automatic payment program on June 30, 2017. And Bayview withdrew the full amount of the first payment on June 30, 2017.

3.      But Bayview nevertheless refused to honor the modification of the mortgage and sued Plaintiff for foreclosure on September 15, 2017.

4.      Plaintiff retained counsel and fought the foreclosure, arguing that she had entered into a loan modification and insisting that Bayview honor the modification. She ultimately prevailed, and the foreclosure case was dismissed on January 2, 2019.

5.      While the foreclosure case was pending, servicing of the mortgage transferred from Bayview to Shellpoint on June 22, 2018.

6.      Shellpoint followed in Bayview's footsteps, refusing to honor Plaintiff's modification even though Plaintiff had accepted Bayview's offer and Shellpoint, as Bayview's successor, was bound to the modification that Bayview had offered.

7.      Even after the 2017 foreclosure case was dismissed, Shellpoint continued in its refusal to honor Plaintiff's modification. Instead of fixing the issue, Shellpoint referred Plaintiff's mortgage for a second, baseless foreclosure lawsuit.

8.       On September 4, 2020, Capital Trust and US Bank filed a second foreclosure action against Plaintiff through their attorneys, Anselmo.

9.      Complaint for the second foreclosure action was filled with false statements. Plaintiff's modification was not acknowledged and the claimed defaults by Plaintiff were pure fabrications.

2

10.     On September 22, 2020, Plaintiff sent a dispute to Anselmo and Shellpoint explaining the situation and identifying the errors and false statements in the second-round foreclosure complaint. The dispute letter attached proof that Plaintiff had timely accepted Bayview's offer, that Plaintiff's mortgage had been modified, and that the prior foreclosure lawsuit had been dismissed on that basis. Anselmo did not respond.

11.     Shellpoint responded by falsely claiming that Plaintiff had not accepted Bayview's offer, and that the mortgage had not been modified.

12.     On November 23, 2020, Plaintiff sent a Notice of Error to Shellpoint and Anselmo explaining that Shellpoint was wrong and again attaching proof that Plaintiff had timely accepted Bayview's offer, that Plaintiff's mortgage had been modified.

13.     Shellpoint and Anselmo both received the Notice of Error, but they did not acknowledge or respond to it in any way.

14.     On December 30, 2020, Plaintiff sent a second Notice of Error to Shellpoint and Anselmo noting that Shellpoint and its attorneys had failed to respond to the first Notice of Error.

15.     Shellpoint and Anselmo both received the second Notice of Error, but they did not acknowledge or respond to it in any way.

16.     Plaintiff now brings this action for damages related to Defendants' misconduct in the loan modification process. Plaintiff's claims arise under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act (the "FDCPA"), the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), and Illinois common law for breach of contract.

**JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction because Plaintiffs' claims arise, in part, under RESPA and the FDCPA, both federal laws. The Court thus has jurisdiction pursuant to § 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

18.     Venue is proper in this District under 28 U.S.C. § 1391, as the events complained of occurred in this District.

**PARTIES**

19.     Plaintiff is a natural person who resides at 10737 South Cottage Grove, Chicago, Illinois 60628 (the "subject property").

20.     Plaintiff purchased the subject property as her primary family residence.

21.     Plaintiff is a resident of Cook County, Illinois.

22.     Shellpoint is a Delaware limited liability company that services residential home mortgages.

23.     Shellpoint does business in Illinois, including in this District.

24.     US Bank is a national bank and trust that represents and acts as the agent for Capital Trust in connection with Capital Trust's portfolio of residential home mortgages.

25.     US Bank does business in Illinois, including in this District.

26.     Capital Trust is a Delaware statutory trust that holds a portfolio of residential home mortgages.

27.     Capital Trust does business in Illinois, including in this District.

28.     Anselmo is a law firm organized as an Illinois limited liability company.

29.     Anselmo does business in Illinois, including in this District.

4

30. Bayview is a Delaware limited liability company that services residential home mortgages.

31. Bayview does business in Illinois, including in this District.

## FACTS SUPPORTING CAUSES OF ACTION

32. Plaintiff took out a mortgage loan (the "mortgage") secured by the subject property.

33. Plaintiff took out the mortgage primarily for personal, family, and household purposes.

34. Plaintiff subsequently fell behind on her mortgage.

35. To address her delinquency, Plaintiff sought to modify the mortgage, which would make her current and in good standing.

36. On or about June 26, 2017, Bayview offered Plaintiff a loan modification that would bring her current.

37. The offer was made in writing and required that Plaintiff take three steps to accept: (i) sign and return the letter containing the offer; (ii) enroll in an automatic payment option; and (iii) make the first payment by July 1, 2017.

38. On June 30, 2017, Plaintiff signed and returned the offer letter via fax.

39. Also on June 30, 2017, Plaintiff set up her bank account with Bayview's automatic payment program.

40. Also on June 30, 2017, Bayview withdrew the full amount of the first payment from Plaintiff's bank account via Bayview's automatic payment system.

41. As of June 30, 2017, Plaintiff had taken all steps necessary to accept Bayview's offer. As a result, as of June 30, 2017, Plaintiff had successfully modified the mortgage.

42.     Bayview acted as agent for the holder of the mortgage at the time, Citifinancial Services, Inc. ("Citi")

43.     Bayview and Citi nevertheless refused to honor the modification of the mortgage and Bayview sued Plaintiff for foreclosure on September 15, 2017.

44.     Plaintiff retained counsel and fought the foreclosure, arguing that she had entered into a loan modification and insisting that Bayview honor the modification.

45.     While the foreclosure case was pending, servicing of the mortgage transferred from Bayview to Shellpoint on June 22, 2018.

46.     At the time of the transfer of servicing, Bayview and Shellpoint considered the mortgage to be in default.

47.     At the same time, ownership of the mortgage transferred from Citi to an entity called MCM 2018-NPL1.

48.     At the time of the transfer of ownership, Citi and MCM 2018-NPL1 considered the mortgage to be in default.

49.     Sometime thereafter, ownership of the mortgage transferred from MCM 2018-NPL1 to Capital Trust, and US Bank was retained to collect the mortgage on behalf of Capital Trust.

50.     At the time of the transfer from MCM 2018-NPL1 to Capital Trust, Capital Trust and MCM 2018-NPL1 considered the mortgage to be in default.

51.     Shellpoint, US Bank, and Capital Trust followed in the footsteps of Bayview and Citi, refusing to honor Plaintiff's modification even though Plaintiff had accepted Bayview's offer.

52.     Shellpoint, as Bayview's successor, was bound to the modification that Bayview had offered and that Plaintiff had timely accepted.

53.     Capital Trust, as Citi's successor, was bound to the modification that Bayview had offered and that Plaintiff had timely accepted.

54.     Plaintiff ultimately prevailed in the 2017 foreclosure case. The case was involuntarily dismissed on January 2, 2019.

55.     Even after the 2017 foreclosure case was dismissed, Shellpoint, Capital Trust, and US Bank continued in their refusal to honor Plaintiff's modification.

56.     Instead of fixing the issue, Shellpoint referred Plaintiff's mortgage for a second, baseless foreclosure lawsuit.

57.     On September 4, 2020, Capital Trust and US Bank filed a second foreclosure action against Plaintiff through their attorneys, Anselmo.

58.     Complaint for the second foreclosure action was filled with false statements and deceptive omissions.

59.     The 2020 foreclosure complaint falsely and deceptively omitted any reference to Plaintiff's modification of the mortgage, which had been consummated on June 30, 2017.

60.     The 2020 foreclosure complaint falsely and deceptively claimed that the mortgage was "due for the February 1, 2018, payment."

61.     In fact, Plaintiff's last payment was on June 30, 2017, and both Bayview and Shellpoint had refused to accept any payments thereafter, choosing instead to accelerate the mortgage under false pretenses.

62.     On September 22, 2020, Plaintiff sent a dispute to Anselmo and Shellpoint explaining that Plaintiff had modified the mortgage with Bayview in June 2017.

63.     In the dispute letter, Plaintiff included proof that Plaintiff had timely accepted Bayview's offer of modification. The proof included (i) a copy of Bayview's offer letter bearing Plaintiff's signature; (ii) a copy of the Plaintiff's application to Bayview's automatic payment program; (iii) the fax confirmation page confirming that Bayview had received the fax of the offer letter bearing Plaintiff's signature and Plaintiff's application for the automatic payment program; (iv) Plaintiff's bank statement showing Bayview's withdrawal om June 30, 2017, of the first payment on the modified mortgage.

64.     Anselmo did not respond.

65.     On October 16, 2020, Shellpoint responded in writing and falsely claimed that Plaintiff had not accepted Bayview's offer and that the mortgage had not been modified.

66.     On November 23, 2020, Plaintiff sent a Notice of Error to Shellpoint at Shellpoint's designated address for receiving Notices of Error. A copy was also sent to Anselmo.

67.     In the November 23, 2020 Notice of Error, Plaintiff explained that Shellpoint was wrong about Plaintiff's acceptance of Bayview's loan modification offer. Plaintiff again included proof that Plaintiff had timely accepted Bayview's offer.

68.     Shellpoint and Anselmo both received the November 23, 2020 Notice of Error, but they did not acknowledge or respond to it in any way.

69.     On December 30, 2020, Plaintiff sent a second Notice of Error to Shellpoint at Shellpoint's designated address for receiving Notices of Error.  A copy was also sent to Anselmo.

70.     In the December 30, 2020 Notice of Error, Plaintiff explained that Shellpoint failed to acknowledge or respond to the November 23, 2020 Notice of Error.

71.    Shellpoint and Anselmo both received the December 30, 2020 Notice of Error, but they did not acknowledge or respond to it in any way.

72.    The 2020 foreclosure case is still pending against Plaintiff.

73.    Despite several demands to Shellpoint, Anselmo, Capital Trust and US Bank, they have all refused to acknowledge the June 30, 2017 modification, have refused to dismiss the 2020 foreclosure case.

74.    Instead, they are continuing to pursue baseless claims of default and non-payment against Plaintiff and are trying to take away her home under false pretenses.

75.    As a direct and proximate result of Defendants' misconduct, Plaintiff was charged excess interest, fees, and other charges on mortgage.

76.    As a direct and proximate result of Defendants' misconduct, Plaintiff was forced to incur attorneys' fees to respond to Defendants' misconduct.

77.    As a direct and proximate result of Defendants' misconduct, Plaintiff has suffered emotional distress.

78.    At all relevant times, Shellpoint acted as agent for US Bank and Capital Trust.

79.    Shellpoint acted at the control and direction of US Bank and Capital Trust.

80.    US Bank and Capital Trust are vicariously liable for the actions of their agent, Shellpoint.

### COUNT I – VIOLATIONS OF RESPA
### (AGAINST SHELLPOINT, US BANK, AND CAPITAL TRUST)

81.    Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

82.    The mortgage is a "federally related mortgage loan" under RESPA and 12 C.F.R. § 1024.2.

83.     Shellpoint is and has been a "servicer" of the subject loan under RESPA §

2605(i)(2) and 12 C.F.R. § 1024.2 at all times relevant to this complaint.

84.     RESPA § 2605(e)(1) states as follows:

**(1) Notice of receipt of inquiry**

**(A) In general**

**If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.**

**(B) Qualified written request.**

**For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—**

**(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and**

**(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.**

85.     12 C.F.R. § 1024.35(a) and (d) state, in relevant part, as follows:

**(a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.**

**\*\*\***

**(d) Acknowledgment of receipt. Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower,**

**the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error.**

86.     Plaintiff's Notices of Error to Shellpoint sent on November 23, 2020, and

December 30, 2020, were each a "qualified written request" and a "notice of error" under

RESPA and its implementing regulations.

87.     Shellpoint filed to provide a written response acknowledging receipt within five

business days of the Notices of Error and failed to take the action requested within that period in

violation of RESPA Section 2605(e)(1) and 12 C.F.R. 1024.35(d).

88.     RESPA Section 2605(e)(2) states as follows:

**(2) Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—**

**(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);**

**(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—**

**(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and**

**(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or**

**(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—**

**(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and**

**(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.**

89.     12 C.F.R. § 1024.37(e) states, in relevant part, follows:

**(e) Response to notice of error -**

**(1) Investigation and response requirements -**

**(i) In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:**

**(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or**

**(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.**

90.     Shellpoint failed to correct the errors identified by Plaintiff in the Notices of Error, in violation of RESPA § 2605(e)(2) and 12 C.F.R. § 1024.35(e).

91.     Shellpoint failed to conduct a reasonable investigation into the errors identified by Plaintiff in the Notices of Error, in violation of RESPA § 2605(e)(2) and 12 C.F.R. § 1024.35(e).

92.     Shellpoint failed to provide a statement of the reason or reasons for its determination that the errors identified by Plaintiff in the Notices of Error had not occurred, in violation of RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e).

93.     Shellpoint failed to respond in any fashion, in violation of RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e).

94.     Upon information and belief, Shellpoint's failure to comply with RESPA was intentional and willful.

95.     US Bank and Capital Trust are vicariously liable for the actions of their agent, Shellpoint.

96.      Plaintiff suffered damages as a result of the above-described misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

12

A.    Grant judgment in Plaintiff's favor against Shellpoint, US Bank, and Capital Trust;

B.    Award Plaintiff actual and additional damages pursuant to Section 2605(f) of RESPA;

C.    Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 2605(f) of RESPA; and

D.    Award any other relief this Honorable Court deems equitable and just.

## COUNT II – VIOLATIONS OF ICFA
### (AGAINST ALL SHELLPOINT, US BANK, AND CAPITAL TRUST)

97.    Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

98.    Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and (e) of ICFA.

99.    Shellpoint, US Bank, and Capital Trust are each a "person" as defined under Section 1(e) of ICFA.

100.    Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

**Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

101.    Shellpoint violated Section 2 of ICFA by engaging in unfair acts in the course of conduct involving trade or commerce when dealing with Plaintiff.

102.    Shellpoint's unfair acts include: violations of RESPA, failure to acknowledge Plaintiff's mortgage modification, making false statements regarding Plaintiff's acceptance of the mortgage modification, and charging Plaintiff with excess interest, fees, and other charges

13

due solely to delays and misconduct related to its refusal to honor Plaintiff's mortgage modification.

103.    Shellpoint's communications and conduct were purposefully confusing, misleading, and oppressive.

104.    Shellpoint intended that Plaintiff rely on its false statements and unfair actions because such statements and actions were made in Shellpoint's official capacity as the servicer of Plaintiff's mortgage.

105.    Shellpoint's conduct was willful, malicious, unfair, and arbitrary.

106.    Shellpoint's conduct offends public policy as it demonstrates an industry-wide practice of ignoring applicable laws and regulations governing loss mitigation, and making it confusing and downright impossible for a borrower to get a fair shot at modifying a residential mortgage loan.

107.    Shellpoint' actions cause substantial injury to consumers generally because:

    a)    consumers reasonably expect their mortgage servicer's promises to be honored and their loans and accounts to be properly managed;

    b)    consumers reasonably expect that creditors and loan servicers will communicate with them truthfully and accurately regarding their account; and

    c)    consumers reasonably expect that large corporations will honor and respect federal regulations

108.    All of Shellpoint's conduct described herein occurred in the course of conduct involving trade or commerce.

109.    US Bank and Capital Trust are vicariously liable for the actions of their agent, Shellpoint.

110.    Plaintiff suffered damages as a result of the above-described misconduct.

111. An award of punitive damages is appropriate because Shellpoint's conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff requests that this Honorable Court:

    A.     Grant judgment in Plaintiff's favor against Shellpoint, US Bank, and Capital Trust;

    B.     Award Plaintiff actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;

    C.     Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 10a(c) of ICFA; and

    D.     Award any other relief this Honorable Court deems equitable and just.

### COUNT III – VIOLATIONS OF THE FDCPA
### (AGAINST SHELLPOINT)

112. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

113. Plaintiff is a consumer under Section 1692a(3) of the FDCPA, as the mortgage was extended on Plaintiff's primary residence and was strictly for personal, family, and household purposes.

114. The mortgage qualifies as a "debt" under Section 1692a(5) of the FDCPA.

115. Shellpoint is a "debt collector" under Section 1692a(6) of the FDCPA because, (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts owed to others, (b) the principal purpose of its business is to collect debts owed to others, and (c) the mortgage was allegedly in default when it acquired servicing and/or enforcement rights thereto.

116. In its attempts to collect a debt from Plaintiff, Shellpoint violated the FDCPA by, among other things:

    a.     making false statements to Plaintiff and to others, including Capital Trust, US Bank, and Anselmo, regarding the status of the mortgage, in violation of Section 1692e and 1692e(10);

15

b.  referring Plaintiff's account to foreclosure, which had the natural consequence of harassing, oppressing, and abusing Plaintiff, in violation of Section 1692d;

c.  communicating and threatening to communicate to US Bank, Capital Trust, and Anselmo credit information regarding the mortgage which Shellpoint knew or should have known to be false, in violation of Section 1692e(8); and

d.  referring Plaintiff's account to foreclosure, which was unfair and unconscionable under the circumstances, in violation of Section 1692f.

117.   Plaintiff suffered damages proximately caused by Shellpoint's misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

A.  Grant judgment in Plaintiff's favor against Shellpoint;

B.  Award Plaintiff statutory and actual damages in an amount to be determined at trial;

C.  Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

D.  Award any other relief this Honorable Court deems equitable and just.

### COUNT IV – VIOLATIONS OF THE FDCPA
### (AGAINST US BANK AND ANSELMO)

118.   Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

119.   Plaintiff is a consumer under Section 1692a(3) of the FDCPA, as the mortgage was extended on Plaintiff's primary residence and was strictly for personal, family, and household purposes.

120.   The mortgage qualifies as a "debt" under Section 1692a(5) of the FDCPA.

121.   US Bank is a "debt collector" under Section 1692a(6) of the FDCPA because, (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts owed to others, and (b) the mortgage was allegedly in default when it acquired enforcement rights thereto.

122.     Anselmo is a "debt collector" under Section 1692a(6) of the FDCPA because, (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts owed to others and (b) the principal purpose of its business is to collect debts owed to others.

123.     In its attempts to collect a debt from Plaintiff, US Bank and Anselmo violated the FDCPA by, among other things:

      a.     making false statements to Plaintiff and to others, including Capital Trust, regarding the status of the mortgage, in violation of Section 1692e and 1692e(10);

      b.     making false statements and false threats to Plaintiff, including in the 2020 foreclosure complaint, in violation of Section 1692e, 1692e(5), and 1692e(10); and

      c.     prosecuting a foreclosure action in false pretenses and in bad faith, in violation of Sections 1692e, 1692e, 1692f.

124.     US Bank is vicariously liable for the actions of its agent, Anselmo.

125.     Plaintiff suffered damages proximately caused by US Bank's and Anselmo's misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

      A.     Grant judgment in Plaintiff's favor against US Bank and Anselmo;

      B.     Award Plaintiff statutory and actual damages in an amount to be determined at trial;

      C.     Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

      D.     Award any other relief this Honorable Court deems equitable and just.

### COUNT V – BREACH OF CONTRACT
### (AGAINST BAYVIEW, SHELLPOINT, US BANK, AND CAPITAL TRUST)

126.     Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

127.     On or about June 26, 2017, Bayview made an offer to Plaintiff for the modification of her mortgage.

17

128.    Plaintiff timely accepted the offer on June 30, 2017.

129.    At all relevant times, the contract was binding on Bayview, Shellpoint, US Bank, and Capital Trust.

130.    Bayview breached the contract in August 2017 by refusing to accept Plaintiff's monthly payment and by refusing to acknowledge that the mortgage had been modified.

131.    Plaintiff identified the breach of contract and requested that Bayview cease its breach and honor the modification of the mortgage.

132.    Bayview refused.

133.    Shellpoint, US Bank, and Capital Trust are each bound by Plaintiff's contract with Bayview.

134.    Shellpoint, US Bank, and Capital Trust breached the contract in or around 2018 by refusing to accept Plaintiff's monthly payments and refusing to acknowledge that the mortgage had been modified.

135.    Plaintiff identified the breach of contract and requested that Shellpoint, US Bank, and Capital Trust cease their breach and honor the modification of the mortgage.

136.    Shellpoint, US Bank, and Capital Trust refused.

137.    Plaintiff suffered damages as a result.

WHEREFORE, Plaintiff requests that this Honorable Court:

    A.    Grant judgment in Plaintiff's favor against Bayview, Shellpoint, US Bank, and Capital Trust;

    B.    Award Plaintiff damages in an amount to be determined at trial;

    C.    Award any other relief this Honorable Court deems equitable and just.


**Plaintiff Demands Trial by Jury.**

18

Respectfully Submitted,

/s/ *Daniel Brown*
Daniel Brown (ARDC # 6299184)
Main Street Attorney, LLC
PO Box 247
Chicago, IL 60690
(773) 453-7410
daniel@mainstreetattorney.com

*Attorney for Plaintiff*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

By: /s/ *Daniel Brown*
Daniel Brown

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Daniel Brown*
Daniel Brown

19